Yes, Your Honor. May it please the Court, Ethan Shankman, Pro Bono Counsel for Petitioner Mr. Popov, I would like to reserve five minutes of time for rebuttal. I would like to address two primary issues, the ineffective assistance of counsel claim and the fact that the visa petition was unlawfully revoked in this case. With respect to ineffective assistance, of course, there are two things that we must show, inadequate performance and prejudice. With respect to inadequate performance, we would submit, Your Honors, that this case is not even a close one. At two critical junctures in the proceeding below, there was not just weak performance on behalf of Mr. Popov's counsel, there was nonexistent performance. The first critical juncture, of course, was when the immigration judge suspended his adjudication of the adjustment of status application so that DHS could decide whether to revoke Mr. Popov's visa petition. The revocation of the visa petition, of course, was the sole basis for ultimately denying his adjustment of status application. Mr. Popov's counsel received that notice and did absolutely nothing. Made no argument, did not attempt to contest it, did not attempt to submit evidence to rebut it, did not submit any of the evidence that his client gave him, did not appeal the decision to revoke, and did not raise any objection as to the lack of any lawful basis for revoking the petition in the first place. And the BIA basically said that it wouldn't have made a difference. That if he had – they concede that he didn't do anything, but it wouldn't have made a difference. So what do we do with that? Yes, Your Honor. That goes – that, of course, is the prejudice issue. Two points there, I think – well, several points. First is that under this Court's jurisprudence, where there's a total abdication on behalf of the counsel, there's a presumption of prejudice. And that presumption is irrebuttable so long as there are some reasonable grounds for – Plausible grounds. Plausible grounds for prevailing. And there were plausible grounds for prevailing here both factually and legally. Factually, the DHS listed a number of reasons why it was revoking the visa petition. And there is sufficient evidence in this record, which was submitted by Mr. Popoff as part of his motion to reopen based on ineffective assistance. There is sufficient evidence in the record to at least show a reasonable probability that with competent counsel, Mr. Popoff could have rebutted the notice of revocation. But what would be the basis for that? For rebutting, Your Honor? Yes. Well, for example, the DHS in its notice said that there was no evidence that Mr. Popoff's U.S. company ever existed. But there is evidence that – we cite it in our brief, but it's at the record at page 255 and 256. There are minutes of board meetings. There's a letter from the CEO. The DHS said that the address that was given for USA and Russia was actually a residential address. But they failed to notice that what they were looking at was Mr. Popoff's residential address. And if they had looked at the attachment to the adjustment of status application, which is at page 277, they would have seen what the business address was for USA and Russia, Incorporated. The DHS said there was – I guess that's how we bombed the Chinese embassy by accident also, maybe. I don't – I haven't briefed that issue, Your Honor. There is also evidence, plenty of evidence in the record, that other subsidiaries of USA and Russia, Incorporated, existed. Wolverine Investments was one of those subsidiaries. There is actually a court judgment, a default judgment issued in favor of Wolverine Investments for $8 million that's in the record, which is certainly evidence that Wolverine Investments existed. There's evidence that another subsidiary called ACNL existed as of 2003, which is the time that these proceedings were taking place. There's the corporate charter. There's the Articles of Incorporation. There are newspaper ads that were run – being run by ACNL at that time. And again, all of this evidence is detailed in our brief, and we would submit that it's sufficient for there at least to be a reasonable chance that he could have rebutted the DHS's showing if he had had competent counsel. Now, of course, that's the factual side. There's also the legal basis on which Mr. Popov could have prevailed, and that is there simply was no authority under the governing statute at the time, Section 1155, to revoke Mr. Popov's position, visa petition. And I think that's an issue that is not – has not really been seriously contested in this case. The government doesn't appear to argue otherwise. It only argues that it was – that the statute was illogical, but it doesn't say that the statute – it doesn't deny that the statute said what it said. As the – as the – Was that issue raised before the Board? I'm sorry, Your Honor? Was that issue raised before the Board, the statutory question? The statutory question, not precisely. Mr. Popov did challenge the revocation, but he did not raise the statutory point. However, Your Honor, Wasn't that part of the ineffective assistance issue, or was he on his own? The issue of the revocation being unlawful is both an independent ground for reversing, and it also is part of ineffective assistance because any reasonable immigration attorney would have bothered to read the statute. It's only a paragraph long. It's – it could not be more clear on its face that visa petitions may not be revoked unless actual notice is given to the petitioner. And then the statute was revised, and then there's the complicated question about whether it applies to Mr. Popov. That's correct, Your Honor. And I would like to – I would like to turn – I would like to turn to that, but if I may, I'd like to make a preliminary point, which is that for purposes of ineffective assistance, it's irrelevant that Congress later change the statute, even if this Court were to find that the amendment does apply retroactively. And that's based on this Court's precedents, including the Castillo-Perez case, which we discuss in our brief, in our reply brief, which says that when incompetent counsel fails to timely make an argument or raise an issue, and then the law is later changed to the – to the alien's disfavor, even if that change in law is retroactive, the government cannot rely on that, that the – that the alien who was subject to ineffective assistance and was denied due process as a result has the right to a remand to reopen the proceeding under the law as it existed at the time that the due process violation occurred. Otherwise, it would be impossible to remedy the due process violation. And so, Your Honor, because it was absolutely obvious both – the BIA precedents at that time, and we cite the matter of Alarcon case and the matter of Salazar case from 1979 and 1980, where the BIA could not be more clear that the statute means what it says, if there was not actual notice given to the petitioner before they commenced their journey to the United States, the revocation is ineffective. And so we submit that any reasonable – reasonably competent immigration attorney would have both bothered to read the statute and looked up what the – what the controlling BIA authority was at the time, and if he had done that. Let me ask you, okay, the BIA gives its decision December 7th, 2004. Statute is in effect December 17th, 2004. So if you go back to the original statute and you say that notice is required to be given to you before you commence your journey to the United States, correct? Correct. How does that work when you're already here? It doesn't. And if you are already here, then the – then the visa petition cannot be revoked. That is what – that is what the – Because you can't have notice? That's – that's correct. That is how the statute – That's why the statute – that's what the, what, Second Circuit held, or? That's what the – That's exactly what the Second – Second Circuit held in First Amendment. That's why the statute was changed, basically. That – that is why the statute was changed. Right. And so just to summarize my last point is that the retroactivity argument, which I will turn to next, is irrelevant on the ineffective assistance, because even if it does apply retroactively, Mr. Popoff is still entitled to a remand for a new proceeding under the law as it existed back in 2003 when the due process violation occurred. Now, turning to whether the statute applies retroactively or not – But you have a problem on the merits of the statute anyway because you have an exhaustion problem with regard to the merits of the statute. I mean, I understand the IAC point. But when I asked you whether or not this issue was raised, you said not really. Thank you, Your Honor. And I would like to address that. This specific issue was not raised. And my response to that is the government, in its brief, does not argue that it was therefore waived. And under very clear precedent from this Court, the government has waived its waiver argument. And I will just cite one case for that proposition. It's the Tocatli case, Tocatli v. Ashcroft, T-O-K-A-T-L-Y, 371, F3, 618, from 2004. That was a waiver of exhaustion? Because we have all these cases floating around that say exhaustion is jurisdictional. Or was it a waiver of something else? It was – it was – I don't recall exactly. It cites a number of other cases. But it's a waiver-of-waiver case. Okay. Let's say that you're right on that. Wouldn't, at a minimum, under Ventura, we couldn't decide it anyway because it wasn't exhausted, but they waived it not being exhausted. But the BIA didn't deal with it. How can the court of appeals deal with it in the first instance? With respect to ineffective assistance of counsel, it's – I don't think – I'm talking about Section 1155. Just the 1155 argument. Well, I guess two things. One is that when Mr. Popov was appearing before the BIA, he was appearing in a pro se capacity. And this Court's precedents say that pleadings of pro se Petitioner should be construed generously. And so we would submit that the fact that he challenged the validity of the revocation, even if he didn't make the statutory argument, would be enough to raise the issue. But second of all, then, I would say that perhaps the issue should be remanded to the BIA so that it can consider it in the first instance. But in a situation – in a situation like this where the reason why it wasn't raised is because of ineffective assistance of counsel, we think – I think it would be – it would sort of defeat the purpose of saying that there must be effective assistance if he's that way. That's all incredibly complicated. But I gather it's also true that you didn't separately raise an ineffective assistance claim with regard to the – not raising the statute either. His – his argument on ineffective assistance was that his – was that his counsel did nothing. Nothing. I see. Did nothing. And so – and for that to be an irrebuttable presumption of prejudice, we have to show some plausible ground. Plausible grounds are both factual and legal. Turning to the retroactivity point, Your Honors, the 2004 amendment is ambiguous as to whether it applies retroactively or not. And that really is the only issue. The government does not in any way dispute our argument that if the statute – if the So it really just boils down to is it ambiguous or not with respect to its temporal application. And the reason why it's ambiguous is because it says it shall apply to revocations that are made before, on, or after the date that the amendment is enacted, which is December 17, 2004. Because 1155 has a provision which says that the effective date of a revocation is the date that the visa petition was approved in the first place, the before, on, or after language is ambiguous. It's not clear whether – whether what it's talking about is whether the effective date is before, on, or after, or whether the revocation decision itself took place before, on, or after that date. I hear what you mean. I get it. Before, on, and after seems to include everything. Whichever one it is, why doesn't before, on, or after do it? Because if it means – if the effective date is before, on, or after, that doesn't tell you whether Congress intended to apply the amendment only to revocations going forward or also to revocation decisions that were made in the past. But how about as applied to him? Is there any ambiguity? As applied to him, yes, Your Honor, because if the – The revocation date? Because if the statute – if the amendment means effective before, on, or after revocations such as the one in Mr. Popoff's case that are made before 2004. It's – it's not clear. It's a – the language is muddled, and that's precisely why we argue it's ambiguous and, therefore, the presumptions against applying statutes retroactively apply. Thank you. Why don't we hear from the government? Thank you. I'm a little confused about the family situation. He has a wife. Yes, Your Honor. She's not – what is she, Russian? Is she a – She is Russian, Your Honor. She's not involved in any of this? She – Mr. Popoff, if he was deported to Russia, would go with his wife and daughters. Thank you. Good morning again. John Hogan for the government. On your last question, Your Honor, I'm not aware that Mrs. Popoff has a removal order, so, I mean, perhaps she might accompany her husband, but I do not believe there's any kind of removal order. Does he have a separate entry visa? He – her last status, this is what he testified to at the hearing, was she wasn't – if he wasn't L-1, that business visa, she wasn't L-2. Right. A beneficiary of him, and that was the last one. Now, that L-1 has clearly expired, and I – He has derivative status, is what you're saying. Exactly. Well, I think that's expired, though. But I think of all the hundreds of pages in the record, Your Honor, is, if we look at five pages, 419 to 424, the reason they're key is this. It all comes down to, was there prejudice in this case by the attorney's inactions of the visa revocation? And that is because if there's prejudice, then he's eligible for some kind of relief, perhaps. And here's why. The judge asked questions specifically about these businesses, ADD in Moscow, U.S. and Russia Corporation in the United States. And Mr. Popov's answers to those questions, regardless of what his attorney did not do to the visa revocation, totally separate proceeding that the district court reviewed, at the removal hearing, what he said in those five pages was he admitted the business address was actually his residence. He admitted that the ADD address in Russia, he didn't know what that was. That was ten years ago. Well, that's supposed to be the parent company, so you would think he would have some information on that. And he also says the petitioner, the U.S. and Russia company, that company, which is really him, is petitioning for him to be an immigrant. He says, well, it really no longer exists. That's what he says at the September 2003 hearing. And the reason I bring that up is because let's just assume the visa was never revoked. Well, what he ultimately wants is adjustment of status. And to get that, he needs the visa, so let's assume it wasn't revoked. But he also has to show it's immediately available, and then the attorney general is going to exercise discretion favorably. But if he's just testified, well, yep, it was my residence. It wasn't a business address. I don't know that address in Moscow. It was ten years ago. I kind of gassed it off. And then he admits that U.S. and Russia Corporation really aren't existing. That's his testimony. I know he submits some documents later on, but that's what he tells the judge. Then it's hard to believe that there's any kind of prejudice involved in this case, regardless of what happens. Well, see, I think the difficulty is this, and we have some cases to this effect, that those statements may not be inconsistent with all these other documents. And I'm not saying he would change his testimony, but it would be in context. I mean, I don't know what it would show us. I don't know ultimately. But having a real lawyer that gives you real advice and explains to you the consequences and the construct is part of having counsel. And it's not like you're parallel, like here's your lawyer and here you are testifying. That's why we have attorney-client privilege. So that really is the difficulty I have. I hear what you're saying, and it makes some sense. But on the other hand, I don't know how to judge that in the context of if you have a real lawyer giving you real advice. What that might have been, you know, yeah, that's my business residence, same thing, and let me explain how this works, and here's these documents, and let me show you the stuff that shows we're doing business here and what I was doing. Then you'd say, well, okay, maybe that's not a problem. But even his own testimony, he submits minutes of a board meeting from March of 2003, but he's testifying in September of 2003 that, well, the company just doesn't really exist. We haven't done anything for a while and haven't even filed tax returns for three years. That's a simple statement to show that there's something rotten here. And I think even further than that is the district court did review the visa revocation. He did have some kind of review. And what the district court judge said there where Mr. Popoff was basically representing himself was, you haven't shown anything. He actually, the district court judge, italicized the word any evidence to rebut what happened with that visa revocation. But does that have any effect on us in his other proceeding? Well, with the case, I mean, the district court case was consolidated with this, and that district court. It's moot. I mean, it's consolidated for purposes of argument. It's not the same case, but it seems to me I'm not sure that in a habeas case, which now is moot, that those findings are somehow binding vis-a-vis the immigration status. It's an interesting question. I don't know. And if it's not binding, I think it at least perhaps could relieve the court of any fear of, well, was there prejudice here? If there was an independent review, he did not appeal to the immigration. I think you have to lay the land a little bit, to be sure I understand it. The government, in fact, his lawyer was told that he was supposed to submit documents. In fact, he submitted nothing. And so we're in the most permissive prejudice world we could be in, right? Correct, yes. Which is whether there's anything that he later submitted that would suggest that there's any plausible ground on which he might have prevailed. Correct. And you're relying not – you're relying on the testimony that occurred before the motion to reopen with the document submitted, is that right? Or am I confused about that? No, that's time-wise. I think that's correct, Your Honor, yes. All right. But isn't the real question whether anything that he later submitted to – with his what he said earlier? Or, as Judge McEwen says, influenced what he said earlier? It could, Your Honor. I guess this gets to the interesting question. The district court case, and I understand what you're saying, but the district court was dealing with that visa revocation. The board and the I.J. were not, because we cited in our brief on page 31, the board and the I.J. really don't have jurisdiction to review that visa petition revocation. That's why he went to the habeas route to begin with. So his argument, ineffective for the visa petition. There was testimony before the I.J. about it. There was, but I think it was in the context more of the cancellation of removal. I think they were trying to figure, did he have good moral character? What are you all about? And that's why it came up. Now, and this is what I was thinking about. It all goes to the exhaustion argument. Well, the government really can't argue exhaustion if, really, he has to go to the district court to argue that visa petition. However, it was addressed by the board. They kind of had to because ultimately the relief he was denied was adjustment of status, which was denied because the visa revocation was denied. And the visa revocation, which isn't really reviewable by the board, reviewable by the district court. So it's very circular. But they still got into it for that reason. And so I don't think the government's weighed anything along those lines. But it also gets back to the ultimate question of those five pages. Was there prejudice in this case? And the government has argued that there isn't. Okay, so let me stop to make sure I understand because what goes where is important here, I think, in the end. The visa revocation, the validity of the visa revocation could not be decided by the board or the IJ, you said? Right. We've cited a case, Your Honor, on page 31. It's the Sano case. And it's a board decision. And I wish I had more authority to give you at this point. I'll have to stick with it. Okay, so let's just take this point to try to sort stuff out. The visa revocation, in your view, must be in the district court, not in the administrative proceeding. Correct, because this court in the Anna International case from 2004 talked about review via that process. Okay. So if, let's just say hypothetically, there's a concern about whether he had effective assistance of counsel, and let's just say we were to say he didn't, so what procedurally would happen? Would he go back and have a new IJ hearing? Probably. I think he would almost have to reach the fact that he was denied adjustment of really not so much the visa petition revocation, but the ultimate relief that that revocation denied him was adjustment, which the board could have looked at. And the board doesn't look at the underlying reason for not adjusting stays, i.e., that he had no visa because the visa was revoked? That's my understanding, Your Honor. See, I'm just having trouble understanding how this actually fits together. So let's just take the possibilities of what could happen here. One possibility is we could say we agree with you and we don't have to figure this out, okay? Another possibility would be, of course, there could be ineffective assistance of counsel but no prejudice. But it seems to me to even make a no prejudice call, we'd have to know what we were making the prejudice call as against. Right, and that gets to the board. You almost have to leap over the visa revocation to see what the board and the IJ were ultimately denying was the immigration judge specifically said, I'm going to deny you adjustment of status because you don't have a visa. But it's like catch-22, isn't it? It is, absolutely. So let's say he said, well, I disagree with you, and then he says to the board, it doesn't seem fair that I got denied adjustment of status because I think that's at odds with this statute. Would the board, let's just say we're at the board, would the board really be adjudicating that? I don't believe, Your Honor, I think that's what this court said, the habeas jurisdiction still survives for those visa revocations to be reviewed. All right, so tell me why it's moot in this case. Now I'm really lost. Yeah. Why is that case still alive? It seems to be critical. Well, Your Honor, to be honest, until 10 minutes ago, I really didn't think it was moot. I thought that part of the detention part of this case was moot. But not the habeas part. Because the judge issued a separate order of, and the cases, that's how at least I approached it when I picked this case up from a colleague of mine, that there's a February 23, 2005 order from the district court. So you think that we still have before us an appeal from the district court's determination with regard to visa revocation? That was my understanding, Your Honor. I hope I'm not misstating something. And we would look at that under the habeas rules on the visa revocation. Right. Because this court said just last year or 2004 in the ANA or ANA International that you had jurisdiction to review those revocations. Right. All right. So then what happens to the IAC problem? This is really a mess. I agree. With regard to, was there an IAC issue raised in the district court? No. With regard to the fact that nobody ever responded to the visa revocation request? Not specifically. And the judge's order doesn't even talk about that. But the judge gets to something similar, which is, well, one of your complaints, Mr. Popoff, is you didn't have time to produce documents. But you didn't do it here either. You didn't have time to do what? I'm sorry? You didn't have time, you didn't have the ability to, during the visa revocation process, get documents in front of them to stop it, stop that. But he also says you didn't do, and he italicizes the word, any, and he says you didn't do anything here either. And he says, I know you're detained, but you've done a lot of, he says you've attached a lot of exhibits to your agency. But he's pro se at that point? He is. He is, Your Honor. He's, so here's another question. If we were to say that the habeas was correct in terms of its determination, would it moot the appeal from the BIA? I don't think so, Your Honor, because he also has that, he applied in front of a board for a separate relief, cancellation of removal. Cancellation of removal. So that is still valid. And then the ineffective assistance as towards, I think he's erasing it, kind of towards. Okay, but let's, no, let's go to cancellation of removal, because cancellation of removal, that's where you have these criteria like 10 years and. Right, and he met them all, but the hardship. But the hardship. And that we would not have jurisdiction to review. Jurisdiction over. But. But. I don't want to make counsel's argument for it. But there's an IAC claim. Exactly. He has an IAC claim, so we might. And the IAC is the judge not accept documents after. Relating to all this. Right. Now, he did accept the initial documents, made his decision after hearing Mr. Popoff's testimony, came back in a couple weeks later and offered new documents. And the judge says, this is new material. He could have had this before and denied it. And the claim is, well, it's ineffective. Let's keep these separate then. As far as that. Still, let's keep the habeas over here with the visa. If we decided there was IAC and prejudice was unclear, it would go back. And the issue that presumably he would get to have a hearing on and relitigate would be the hardship, because the other issues are not that issue. Okay. So then he would have a hardship hearing, and absent the very narrow circumstance in which it might be appealable, basically that would be the end of the hearings. Is that correct? Because that normally would not be appealable. Right. Okay. I gather you would claim that there wasn't prejudice with regard to the cancellation either. No. And, again, because the documents that were submitted afterwards and rejected, Mr. Popoff had already testified about. And what the documents were was another letter from his wife, his kids, teachers, and his mother, I believe. Did anybody respond to this? Did the BIA or the IJ ever say deal with the prejudice question or the IAC question? Not to be – ironically, the board seems to address it more in the visa petition context or revocation than the cancellation. But the government would argue that Mr. Popoff was asked a lot of questions about the hardship, about his kids and his wife and everything, going back to Russia. But, honestly, we don't really have a ruling from the board about it. Say that again, Your Honor? Honestly, we really don't have a ruling from the board about any of that. Not so much as the documents, but the board does agree that the cancellation removal was properly denied. They do say that. But it doesn't talk about either due process or IAC problem with regard to the documents. Not specifically. And what about – was it in the later documents that the psychologist or psychiatrist affidavit about the emotional and mental impact on the children? I believe it was. So it's sort of a – we'll call those after-the-fact documents. Mr. Popoff had testified, too, about his one child. I think he spoke more of the breathing problems or speech problems about his daughters and how they did in school. He talked about that and the problems he and his wife had and what it would – you know, they were out of money and all that. I just don't think there's anything in those documents that would result in a different conclusion. I mean, it's sad when you look at the pictures of Mr. Popoff's kids going back to Russia, but at the same time I'm not sure it changes the hardship determination factor by having these few extra documents. Because Mr. Popoff was asked specifically the last question by the judge, is there anything else about hardship you want to tell me? And the answer is no, after he'd done that. So I think the judge had a good basis to make that consideration and there wasn't – the new documents shouldn't change that. Senator, go back for a moment to the district court and the habeas and the visa. There was no IAC as such raised before the district court? Not that I'm aware of, Your Honor. Was the statute raised before the district court? No, Your Honor, and I think – the retroactivity of the statute? Well, before the retroactivity, the statute – the prior statute. I don't believe Mr. – well, he's pro se. I don't believe he raised that. And the board certainly didn't get to it because, well, the statute hadn't been changed yet, so maybe that's why they didn't get into the retroactivity part of it yet. But also, in your theory, the board never should have gotten to any of this anyway. Probably not, Your Honor. But I don't think we have to get to the retroactivity because I think the language is clear that it applies to on – But it's a very strange statute to be procedurally retroactive. In other words, what you'd have to be saying is that even though they didn't give you notice at the time of the revocation and even though the revocation was, therefore, procedurally erroneous at the time entered, assuming that, we're now going to pop up and say that it was proper when entered, even though it wasn't proper when entered. And that's a different kind of retroactivity than one ordinarily sees. It's one thing to say that you have a set of facts that existed at the time and that we're going to treat them differently. But it's another thing to say that you're going to take an invalid revocation and turn it into a valid revocation, which is essentially what this would be doing. I think you're exactly right, Your Honor. But that's why the original statute was so, for lack of a better word, weird. It was weird. I understand that. But what I'm saying is suppose it wasn't weird and suppose that you just decided – I mean, lurking behind landscraft are constitutional problems. And I'm just wondering whether if this were really what was going on here, we don't have those constitutional problems, because essentially you have a circumstance in which you have a procedural rule about how you have to proceed in order to do something. They didn't do it. Let's assume that. It was no good. This was a bad piece of paper that wasn't worth the piece of paper it was written on at the time it was issued. And all of a sudden, what, eight or nine years later, the government is showing up and saying, you know that no good piece of paper? It's no good piece of paper. And I'm just wondering whether you would have changed the word, made to effective, to make it more effective. Because it would act as if they did something they didn't do. I think, Your Honor, the short answer to that is if Congress wanted the statute to mean what the petitioner does, they would have changed one word, and that is change the word made to effective. And when you're – the argument is – I guess what I'm saying is I'm suggesting that one would have to be pretty sure that Congress meant that, because if they do mean it, it seems to me there's – unlike in most of these instances, there really is a possible constitutional problem, because you're – it's not simply a question of changing the result with respect to a set of facts. It's that you're making a proceeding as if it never happened. And, Your Honor, I think that's – even the petitioner's opening brief talks about the House report clearly said, you know, they couldn't be doing revocations before. So you're saying we should interpret it that way and then address the constitutional question? No, Your Honor. I think it's just – I think it's just straight – it's clear on its face what the statute says. But what I'm saying is that lurking behind Lanscraft, the reason why Lanscraft wants you to be so sure that this was intended is because there are – is a narrow set of circumstances in which you can't make things retroactive. And I'm not sure this isn't one of them. I think you're – I think this should be retroactive, Your Honor, because Congress was worried about – that statute before was – it wasn't doing anybody any good in their – in Congress's mind. We have to change it. Let's make it retroactive to cover people like Mr. Popoff, who we find for A, B, C, and D why the visa should be revoked. There's no reason why. Because he's here, we can't do that. That's why it's retroactive to him. But Mr. Popoff could well have been living this life – I mean, I have no evidence that he did. But he could have gotten this piece of paper which said your visa is revoked and said, oh, this is not valid, they didn't do X, so I'm going to just go on with the rest of my life on the theory that I have a valid visa. And he would have been right to have done that. If you believe – Depending on how you interpret the statute. Right. Exactly. And I guess it gets back to the first thing I started with is even if they hadn't revoked it, the very – I understand that. But I'm making that assumption. I agree, Your Honor. I agree. And if one assumes that, and he looks at it and he says, well, very interesting, but this is just a useless piece of paper and I'm going to just live my life and stay here and go on with my life because this is not worth anything. And that has consequences. He stays in the country. He doesn't go back to Russia. He doesn't set up his life back in Russia. And all of a sudden, eight years later, they say, you know that piece of paper? It's no good anymore. It's now good all of a sudden. But that paper still never gave him legal status here anyway, I guess is the government's point, because he still had overstayed the very first visa he got. I just want to be clear, Your Honor. I hope I didn't misstate the board's jurisdiction of his visa revocation. I did not really focus on that part of the argument until it came up. And I cited a page in our brief. I'll go back and make sure that I have not misstated it. I appreciate that because you've been very helpful. And because we do first, before we can even decide this case, need to sort out which things belong where, even though they might be referenced in more than one place. So it may be that we'll ask for supplemental briefing. But if you had – if you wanted to submit a letter either confirming or changing your statement, then you're welcome to do that. I'll verify. Thank you. And you were extraordinarily helpful. Thank you very much. Your Honors, I think it would help if we took this chronologically one step at a time and then we could address both the constitutional issue, which we do make in our briefs, and the question of where everything fits. And we start with the fact that Mr. Popoff was granted a visa petition back in 1994 based on a finding by the service that he met the criteria for international manager or executive. He applies soon thereafter for adjustment of status. The government sits on his application for like eight years until finally when he's in detention and he resubmits his adjustment of status application. And why is he in detention at that point? He's in detention at that point because he was stopped at a checkpoint and he had overstayed his non-immigrant visa. Was there a warrant out for him as well? There was previously a warrant, a state court warrant having to do with a DUI. But I don't – none of that became what was determined to be relevant in any way. Another thing we haven't talked about at all this morning is the whole question of whether the overstay was – you asserted in your brief, I don't really know where it's coming from, that the overstay didn't matter. But let's move that aside for now. So he's in detention. He's renewed his adjustment of status application. The government is trying to figure out what, you know, how to get rid of this guy. And then they decide nine years after his petition has been granted. And when his petition is granted back in 1994, it's irrevocable. As the government concedes under the statute as it existed at that time, he was already in the United States. Therefore, the mandatory notice requirement could not be satisfied. And thus, the petition was irrevocable. And this goes to the constitutional argument that he relied, reasonably relied on that. So then nine years later, they decide to revoke it. And the immigration judge says, okay, I'm going to pause this proceeding to let the government decide what to do about the visa petition revocation. And it's at that point that competent counsel would have said, with respect, Your Honor, there's no authority to revoke the visa petition. You shouldn't – it's under the statute. It's irrevocable. And could the I.J. have decided that, though? I mean, what we're being told on the other side here is that's not up to the I.J. anyway. What was up to the I.J. was to just continue adjudicating the adjustment of status application. There was no reason to pause the proceeding to allow the government to do something that it had no authority to do. Well, but the I.J. can't necessarily make that determination. Have you ever challenged the fact that the proceeding was, in effect, suspended as a grounds for some due process or other claim? Yeah. That is part of our ineffective assistance claim is that he never – Well, that's a good point. And that's what I'm focusing on is the ineffective assistance is that it was ineffective for him not to, A, not to challenge the visa revocation in any respect, put in any evidence, but, B, not to object to the immigration judge that this is not a basis for not adjudicating the adjustment of status application because the visa petition is irrevocable. Once that isn't done, once there's this total abdication of duty to Mr. Popoff by his counsel – because maybe the I.J. had to do that and let the visa revocation issue go someplace else. Where that else is, I don't know. Well, we submit that the I.J. made it part of this proceeding. I'm sorry, what? We submit that the I.J. made it part of this proceeding by saying, I'm going to pause the adjudication of your adjustment of status application so that we can see what happens with the visa. You just could have gone ahead and let that thing go ahead, and then, well, they clash, they clash, just they clash. That's correct, and there was no authority for it. And the fact that the district court in the habeas proceeding has determined on the merits that based on the record below, the visa petition revocation was justified based on the record is not a cure for the ineffective assistance. Well, but let's decide a very basic question first. Do we have an appeal from a non-district court decision on the visa revocation question before us? There – the – yes. We do. So that's different from what you said at the outset when you said it was moot. If – I don't recall saying it was moot, but if I did, I misspoke. The part of the habeas claim that's moot is the part that has to do with the detention. Correct. Because he's been released. We don't argue that based on – if you only look at the record that was before DHS at the time it made its decision to revoke, which is what the – which is what the district court looked at, we don't argue that it was an abuse of discretion for the DHS to revoke the petition. But then, if that's the case – Because it was based on a completely uncontested – uncontested record. But, okay, so if that's true, if there was no abuse in revoking, then we would affirm the district court. Except, Your Honor, with regard to the evidence, there's no abuse of discretion. But it still remains the case that there was no legal authority to revoke. All right. Is there an IAC claim in the district court? No, there couldn't be, because there was no lawyer in the district court. Correct. And our argument with respect to the district court is that it was erroneous for the district And that is an argument – Essentially making a plain error-like argument. Yes. And Mr. Popoff didn't make that exact argument, but he was, A, represented pro se, and, B, the government has waived this waiver argument. It does not argue in its brief that Mr. Popoff waives the 1155 argument by raising it for the first time on appeal. And that's a different – That's different in the habeas context than it might be in the administrative context. Well, I would have to go back and look at the cases more carefully. Probably more favorable to you, because that's just a waiver waiver. Exactly. Whereas the other one's a jurisdiction waiver. Precisely correct, Your Honor. And I would point out that we did make the constitutional argument in our opening brief. The government didn't respond to it. We elaborated on it further in our reply brief. And we would submit that there is a potentially serious constitutional question here when Petitioners in Mr. Popoff's position have reasonably relied on the fact that their visa petition was irrevocable and would not – would not be subject to reopening again. Now, of course – Has there since Lanscraft been a case – I mean, this is – if we get to this very complicated statutory question, very – been a hard case, because the language was certainly trying to be clear. And if we find that they, you know, finally have done it, they finally have come up with a really clear retroactivity language. Is there any post-Lanscraft case which actually reached the constitutional issue and said that there was a constitutional problem with a retroactivity – a retroactive statute? Not that I'm aware of. Judge Pragerson, I believe, reaches this issue in a concurring opinion. In a case that we cite in our briefs. All right. Which name alludes me at this point. Thank you. Well, we have your argument in mind. We thank both counsel. It's a very procedurally complicated, and I think the oral argument has been very helpful. We'll take a look at whether we want further briefing, and we'll let you know. The case just argued is submitted, and we're adjourned for the morning. Thank you. Thank you. All rise. This court is adjourned.
judges: McKeown, Berzon, King